**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0580n.06
Filed: July 8, 2005

**Nos. 04-1739, 04-1740**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff-Appellee, | ) |
| | ) |
| v. | )   ON APPEAL FROM THE UNITED |
| | )   STATES DISTRICT COURT FOR |
| GINO WILLIAMS and | )   THE EASTERN DISTRICT OF |
| | )   MICHIGAN |
| JULIAN ACOSTA, | ) |
| | ) |
|     Defendants-Appellants. | ) |
| | ) |
| | ) |

Before: SILER and GIBBONS, Circuit Judges; STAFFORD, District Judge.[*]

**SILER**, Circuit Judge. Defendants Gino Williams and Julian Acosta were each convicted of a single count of use of or carrying a firearm during and in relation to a drug trafficking crime. Both argue insufficient evidence existed to support the jury's verdict of guilty; that the district court improperly instructed the jury, thereby amending the indictment; that the district court erred by denying a motion to suppress evidence; and that the district court erred by failing to dismiss the indictment as duplicitous. We affirm the decision of the district court.

**I. BACKGROUND**

---

[*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

In 2002, Williams, Acosta, and Michael Coffel, not a party here, were indicted for aiding and abetting each other in using or carrying firearms during and in relation to the commission of a drug trafficking offense in violation of 18 U.S.C. §§ 924(c) and 2.

The underlying scenario arose in early 2002, when Coffel allegedly met Williams and Acosta at Acosta's home to plan a burglary of a home purported to contain eight pounds of marijuana and some firearms. Williams and Acosta entered the residence unarmed while Coffel remained outside as lookout and driver. When Williams and Acosta returned, they were carrying a Playstation, a pair of boots, a coat, an assault rifle, approximately six ounces of marijuana, a bottle of ecstacy tablets, three "8-balls" of cocaine, and a 9 mm handgun. Later, Emmanuel Raynor, an FBI informant, saw Acosta with an assault rifle, which Acosta admitted he obtained in a robbery. Knowing that a similar firearm had been stolen from an acquaintance, Raynor told Agent Joseph Callahan of the FBI.

At that time, Rose Martinez was living with Acosta. In April 2002, Martinez left Acosta. Fearing Acosta, she brought Officer Matos of the Detroit Police Department with her to the residence when she returned to retrieve her belongings. Although Martinez had a key, the door was unlocked. Martinez informed Matos that a gun was hidden under the stairs. Matos found a gun hidden under the stairs and gave it to the FBI.

An evidentiary hearing was held to determine the propriety of Matos's search of Acosta's residence and the admissibility of the gun. The district court held that the warrantless search and seizure were justified based on Martinez's actual and apparent authority to consent to the search.

Coffel entered a plea of guilty, and a jury returned a guilty verdict against Williams and Acosta. The district court sentenced Williams and Acosta each to 60 months' imprisonment.

## II.  MOTION TO SUPPRESS

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Foster*, 376 F.3d 577, 583 (6th Cir.), *cert denied*, 125 S.Ct. 635 (quoting *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000)).  A search by police does not violate the Fourth Amendment if "voluntary consent has been obtained, either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citation omitted).  Even if the consenting party does not, in fact, possess "common authority over the premises," the search is still valid if the police reasonably believed such authority existed. *Id.* at 186.  Therefore, we consider, "against an objective standard," whether the facts available to Matos at the time warranted "a man of reasonable caution" the belief that Martinez had authority over the premises. *Id.* at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).  "If not, then [the] warrantless entry without further inquiry is unlawful unless authority actually exists." *Id*. at 188-89.

The facts in the present case are analogous to those in *Harajli v. Huron Township*, 365 F.3d 501 (6th Cir. 2004), in which an estranged wife sought police protection when removing her belongings from her husband's home.  We ultimately determined that no Fourth Amendment violation occurred and the officers "could have reasonably believed that [she] had the authority to consent to their entry inside." *Id*. at 506.  Here, as Martinez had recently resided full-time in the apartment and her key evidenced that she  still had "common authority over the premises," Matos's

belief that she had authority to grant a search was reasonable. Accordingly, the district court's denial of the motion to suppress was not clearly erroneous.

### III. SUFFICIENCY OF EVIDENCE

The evidence is sufficient to sustain a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Clay*, 346 F.3d 173, 176 (6th Cir. 2003). Here, both Williams and Acosta argue that insufficient evidence exists to show that they carried or used a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

The elements of a § 924(c) violation are (1) the carrying or use of a firearm; (2) during and in relation to a drug trafficking crime. *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999); 18 U.S.C. § 924(c)(1). Williams and Acosta argue that the government failed to prove each required element beyond a reasonable doubt.

*1. Drug trafficking crime*

Coffel testified that he, Williams, and Acosta burglarized a house with the intention of obtaining eight pounds of marijuana. He further testified that they obtained fifty ecstasy pills, about five or six ounces of marijuana, three 8-balls of cocaine, and an unknown quantity of powder cocaine. Sufficient evidence was presented for a reasonable jury to conclude that a drug trafficking crime occurred – logically the only reason three men would burglarize a house with the purpose of obtaining eight *pounds* of marijuana is for the purpose of obtaining it for sale. Accordingly, a reasonable jury *could* have found the first element of the indicted offense. Moreover, they later

distributed the ecstacy to "Juicy" for the promise of money, and some of the marijuana to friends in exchange for the information leading to the burglary.

*2. Carrying a firearm during a drug trafficking crime*

The terms "use" and "carry" in § 924(c)(1) are construed broadly. *See United States v. Brown*, 915 F.2d 219, 224 (6th Cir. 1990). Section 924(c)(1), however, "will not support conviction for mere possession of a firearm during the course of criminal conduct." *Id*. (citing *United States v. Lyman*, 892 F.2d 751, 753 (8th Cir.1989)). Rather, the government must establish some relationship between the firearms possessed by Williams and Acosta and the predicate drug trafficking offense. *Id*. (citing *United States v. Wilson*, 884 F.2d 174, 177 (5th Cir. 1989)). As the government does not appear to claim that firearms were *used* during the burglary it must prove that they were carried and were related to the burglary. *See Bailey v. United States*, 516 U.S. 137, 149 (1995).

There is little question that the rifle and handgun were transported as they were removed from the victim's house. Additionally, the evidence logically supports a jury finding that the firearms furthered the purpose or effect of the crime, and that their presence or involvement was not the result of mere coincidence. *See United States v. McRae*, 156 F.3d 708, 712 (6th Cir. 1998).

## IV. AMENDMENT OF INDICTMENT

We review the sufficiency of an indictment de novo. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). Where there have been no objections, jury instructions are reviewed for plain error to determine whether the district court correctly stated the law in its charge to the jury and, if not, whether the error affected the defendants' "substantial rights." Fed.R.Crim.P. 52(a); *see also United States v. Neuroth*, 809 F.2d 339, 343 (6th Cir. 1987). An indictment is subject to a

constructive amendment when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986)).

Here, the indicted crime under § 924(c) was the illegal *carrying or use* of a firearm *during or in relation to* a drug trafficking crime. The jury, however, was instructed on the illegal *possession* of a firearm *in furtherance of* a drug trafficking crime. These different prongs of § 924(c) delineate separate crimes under the statute. *United States v. Combs*, 369 F.3d 925, 932 (6th Cir. 2004). Accordingly, by instructing the jury on the standard for the "in furtherance of" prong, the district court erred because that was not the charged offense. However, the "in furtherance of" prong is subject to "a slightly higher standard, encompassing the 'during and in relation to' language" of § 924(c). *Combs*, 369 F.3d at 932.

Unlike *Combs*, in which the district court's instruction allowed conviction for an "in furtherance of" crime using the less rigorous "during and in relation to" standard, here the erroneous jury instruction allowed the jury to convict Williams and Acosta of a "during and in relation to" offense using the more rigorous "in furtherance of" standard. Therefore, the jury could not have found that the defendants used or carried a firearm "in furtherance of" a drug trafficking offense without also implicitly finding that the defendants used or carried a firearm "during and in relation to" a drug trafficking offense. "From the House Committee Report we know that members regarded 'in furtherance of' as a slightly higher standard, encompassing the 'during and in relation to'

language." *Id.* (quoting H.R.REP. No. 105- 344, at 11 (1997)). Accordingly, the erroneous instruction did not modify the "essential elements of the offense charged" so as to create a substantial likelihood that Williams and Acosta were convicted of an offense other than the offense charged in the indictment. *See Hathaway*, 798 F.2d at 910.

## V.  MOTION TO DISMISS

We review a district court's refusal to dismiss an indictment for abuse of discretion. *See, e.g., United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001). An indictment is considered sufficient "if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *Id.* (quoting *United States v. Monus*, 128 F.3d 376, 388 (6th Cir.1997)). When considering a motion to dismiss an indictment, we consider two factors: "[F]irst, whether the indictment 'contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and second, [whether it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Middleton*, 246 F.3d at 841-42.

Williams and Acosta claim they were denied their due process rights as they were "convicted" of possessing narcotics with intent to distribute, although that crime was not charged separately in the indictment. Accordingly, they moved to dismiss the indictment prior to trial, arguing that the indictment charges two separate offenses, (1) the carrying and use of a firearm during a drug trafficking crime, and (2) the predicate drug trafficking crime. The district court denied the motion, finding the indictment not duplicitous because a general verdict of guilty would have identifiable support.

04-1739/1740
*United States v. Williams/Acosta*

As we noted in *United States v. Ospina*, 18 F.3d 1332 (6th Cir. 1994), the language of § 924(c) includes crimes "for which [the defendant] *may be prosecuted*." *Id*. at 1335 (emphasis added). Accordingly, *Opsina* concluded a sentence under §924(c) could be imposed *in the absence of any conviction* of an underlying drug offense. *Id*. at 1336. Thus, as in *Opsina*, the failure of the government to seek an indictment for the predicate trafficking crimes should not render the indictment invalid in light of the language of the statute. Therefore, the indictment "fairly informed" Williams and Acosta of the charges and the actions that would be necessary to defend them. The indictment was not duplicitous. Accordingly, the district court's denial of the motion to dismiss was not an abuse of discretion.

For the aforementioned reasons, the decision of the district court is AFFIRMED.[1]

---

[1]The defendants only appealed their convictions and no mention of improper sentencing was brought up in the briefs or at argument. On the day before argument, defendant Williams raised the sentencing issue in a *pro se* letter to the court, pursuant to Federal Rule of Appellate Procedure 28(j), but he failed to follow the Rule by serving copies to the other parties, or even to his own counsel. Therefore, we have disregarded his attack on his sentence.